## BERK *v.* BLAHA

### OPINION OF THE COURT

1. AUTOMOBILES—ANTICIPATION OF DANGER—COLLISION.

> A driver is not required to have his car under such control as to be able to avoid collision with a car coming illegally into his path, but, after he realizes impending danger he must exercise reasonable care for his own protection and take steps to avoid a collision.

2. AUTOMOBILES—NEGLIGENCE—REASONABLE CARE—COLLISION.

> The duty of care when another driver comes illegally into one's path arises when continuing observations reveal, or should reveal, impending danger to a reasonably prudent man and post-observation negligence or the lack of it is determined by scrutinizing the driver's actions after the time he became aware of the danger to determine whether he is guilty of negligence for failure to act as a reasonably prudent person acting in an emergency not of his making.

3. AUTOMOBILES—NEGLIGENCE—DIRECTED VERDICT.

> Directed verdict for defendant in action for injuries sustained when car in which plaintiffs were riding, after failing to stop at a flashing red signal, collided with defendant's car, *held* proper where defendant had a right to assume that the plaintiff's car would stop at the signal as required by law and where there was no indication that the defendant was negligent after he observed that plaintiffs' car was not going to stop (MCLA § 257.615).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 355, 356.
[2]  8 Am Jur 2d, Automobiles and Highway Traffic § 748.
[3, 6]  8 Am Jur 2d, Automobiles and Highway Traffic § 742.
[4, 5, 7, 8]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 195, 210.

DISSENTING OPINION
LEVIN, J.

4. AUTOMOBILES—YELLOW FLASHER—STATUTES.

    *The exercise of caution when proceeding through a yellow flasher signal is required by statute (MCLA § 257.614).*

5. AUTOMOBILES—NEGLIGENCE—DIRECTED VERDICT.

    *Directed verdict for defendant motorist, the sole witness, who testified as an interested witness, that his view on approaching the intersection where his vehicle collided with a vehicle in which the plaintiffs were riding was unobstructed for 250 feet and that he slowed down and looked before proceeding through a yellow flasher at the intersection but still did not see plaintiffs' vehicle, although it was there to be seen, until it had passed through a red flasher and entered the intersection, was erroneous and the case should have been submitted to the jury because reasonable men could infer from the evidence that had defendant used the caution required of one passing through a yellow flasher, he would have seen plaintiffs' vehicle in time to avoid the collision (MCLA § 257.614).*

6. AUTOMOBILES—NEGLIGENCE—INTERSECTION—RED FLASHER.

    *Principle that defendant motorist had a right to assume that vehicle in which plaintiffs were riding would stop at a red flasher before entering an intersection is without application where the defendant had not even seen plaintiffs' vehicle until immediately before the collision and had no right to dispense with observation on the assumption that any motorist approaching the intersection facing the red flasher would stop (MCLA § 257.614).*

7. AUTOMOBILES—NEGLIGENCE—YELLOW FLASHER—INTERSECTION—DUTY.

    *A motorist facing a yellow flasher is expected to take some affirmative action to avoid collision with intersecting vehicles coming illegally into his path through a red flasher and must exercise a higher degree of care than the ordinary care to be observed at uncontrolled intersections (MCLA § 257.614).*

8. AUTOMOBILES—NEGLIGENCE—YELLOW FLASHER—INTERSECTION—CAUTION.

    *Blindly entering an intersection controlled by a yellow flasher on the assumption that intersecting traffic will stop and not challenge one's right of way until one happens to see another vehicle proceeding in a manner inconsistent with that assumption does not constitute the degree of caution required to preclude negligence (MCLA § 257.614).*

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 June 10, 1969 at Detroit. (Docket No. 6,738.) Decided December 10, 1969. Leave to appeal granted August 13, 1970, 383 Mich 817.

Complaint by William Berk, guardian of Cheryl Lynn Berk, a minor, and by Ann T. Berk against Robert Blaha, Sr. and Robert Blaha, Jr. for injuries sustained in an automobile collision. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Charfoos & Charfoos,* for plaintiffs.

*Plunkett, Cooney, Rutt & Peacock (John D. Hayes* of counsel), for defendants.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiffs were injured when the car in which they were riding failed to stop for a red flasher signal at an intersection and collided with defendants' vehicle.*

At the trial defendant was the only witness that testified as to how the accident happened and he was called by plaintiff for cross-examination pursuant to the provisions of MCLA § 600.2161 (Stat Ann 1962 Rev § 27A.2161). Although his testimony revealed that he did not see the plaintiffs' vehicle as it approached the intersection, he did indicate that he was traveling below the posted speed limit for that area; that he slowed his vehicle as he approached the intersection which from his direction bore a flashing amber light; and that he applied his

---

* Plaintiffs' driver breached his plain duty under MCLA §§ 257.614, 257.651 (Stat Ann 1968 Rev §§ 9.2314, 9.2351) to stop and yield right of way to the defendant.

brakes immediately upon seeing the vehicle which was then about 20 feet in front of him.

After the defendant testified the trial court granted defendant's motion for a directed verdict of no cause of action.

Plaintiffs argue on appeal that a question of fact as to defendant's negligence was raised as a consequence of the testimony that should have been submitted to the jury. We do not agree.

The standard to be applied in cases of this type is well stated in *McGuire* v. *Rabaut* (1958), 354 Mich 230, 236:

"The favored driver is thus not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path. At what point, then, does the second principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point. Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right-of-way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right-of-way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing

subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making."

See also: *Churukian* v. *LaGest* (1959), 357 Mich 173, 182–184; *Haney* v. *Frederick V. Gentsch, Inc.* (1962), 368 Mich 354, 359–362; and *DePriest* v. *Kooiman* (1967), 379 Mich 44.

Defendant had a right to assume that plaintiff would stop at the signal as required by law (MCLA § 257.615 [Stat Ann 1968 Rev § 9.2314]). Further, from the testimony in this case there is no indication that the defendant was guilty of negligence from the point that he observed that plaintiff's car was not going to stop. Therefore, there was no question of fact that could be presented to the jury and the trial court did not err in granting the directed verdict.

Affirmed.

Fitzgerald, P. J., concurred.

Levin, J. (*dissenting*). I am unable to concur because there was sufficient evidence upon favorable-to-plaintiffs view so that their case should have been submitted to the jury for its verdict.

The plaintiffs were passengers in a motor vehicle which collided at an intersection with the defendants' vehicle. There was a flashing light at the intersection; a red flasher faced the vehicle in which the plaintiffs were riding and a yellow flasher faced the vehicle driven by the defendant. It was stipulated that the driver of the plaintiffs' vehicle, in violation of his statutory duty,[1] failed to stop for

_____
[1] MCLA § 257.614 (Stat Ann 1968 Rev § 9.2314).

the red flasher. It is not claimed that the plaintiff passengers were contributorily negligent.

Under the statute, the defendant driver—who faced the yellow flasher—was obliged to "proceed through the intersection or past such signal only with *caution*."[2] (Emphasis supplied.) The question presented is whether *all*[3] reasonable men would agree that the defendant driver, in conformity with this statutory requirement, exercised "caution" when he proceeded through the intersection. The plaintiffs contend that the defendant driver's failure to exercise caution was a cause of their injury, albeit not the sole cause (the apparent negligence of the driver of the car in which the plaintiffs were riding also being a cause).[4]

The defendant driver, the only witness who testified at the trial, said that although he looked first to his left and then to his right as he approached the intersection, he did not observe plaintiffs' vehicle. He conceded that his view of the direction from which the plaintiffs' vehicle was approaching was unobstructed for 250 feet before the intersection. He said that he first observed the plaintiffs' vehicle when it was entering the intersection 20 or 25 feet in front of him. The accident occurred at night; the defendant acknowledged that the lights of the plaintiffs' vehicle were lit.

The defendant further testified that he was traveling at less than 40 miles per hour, which meant that he had a clear view of the road over which the

---

[2] MCLA § 257.614 (Stat Ann 1968 Rev § 9.2314).

[3] *Normand* v. *Thomas Theatre Corporation* (1957), 349 Mich 50, 58; *Beach* v. *City of St Joseph* (1916), 192 Mich 296, 301; *Sadowski* v. *The Michigan Car Company* (1890), 84 Mich 100, 105.

[4] A person who suffers an indivisible injury caused by the concurrent but independent negligent acts of two or more persons may recover his entire damage from any of them. See *Maddux* v. *Donaldson* (1961), 362 Mich 425; *Blazo* v. *Neveau* (1969), 382 Mich 415, 424.

plaintiffs' vehicle was approaching for more than four seconds before the accident.[5] Since the defendant conceded that he failed to see the plaintiffs' vehicle until it was 20 or 25 feet in front of him, he failed to see the plaintiffs' vehicle although it was there to be seen.[6]

Under the circumstance that the defendant was an interested witness, the jury could properly disbelieve his testimony, even though it was uncontradicted.[7] He testified that he looked, did not see the plaintiffs' vehicle, but nevertheless reduced his speed and exercised care in approaching the intersection. Rejection of the defendant's exculpatory testimony would leave no evidence other than the evidence of the defendant's clear view, the time he had to act but did not act, and the fact that the plaintiffs' vehicle was there to be seen yet was not seen until a split second before the accident. The jury could reasonably infer from this evidence that had the defendant exercised due care and caution he would have seen the plaintiffs' vehicle in time to avoid the collision. That, of course, is not a mandatory inference, but it is one which the jury as trier of fact could properly draw.[8]

---

[5] The defendant stated that during the 250 feet preceding the accident he let up on the accelerator, reducing his speed from 40 miles per hour to 30 miles per hour before the accident. If the defendant did so reduce his speed, he may have had a view of the road over which the plaintiffs' vehicle was approaching for over five seconds before the accident. At 30 miles per hour, an automobile travels 44 feet per second; at 35 miles per hour, 51 feet per second; and at 40 miles per hour, 59 feet per second. See ALR Desk Book, Document No. 175, p 455.

[6] Cf. Jackson v. Rauch (1969), 18 Mich App 533, 537; Blazo v. Neveau, supra, p 423.

[7] 5 Callaghan, Michigan Pleading & Practice (2d ed), § 37.205, pp 557, 558; MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158); Goppelt v. Burgess (1902), 132 Mich 28, 30; Ball-Barnhart-Putman Co. v. Lane (1903), 135 Mich 275.

[8] See McKinney v. Yelavich (1958), 352 Mich 687, 697, 698, 700; see, also, Smith v. Wassink (1933), 262 Mich 639; Holley v. Farley (1939), 289 Mich 676.

No doubt many reasonable men would conclude that the defendant drove "cautiously." But a verdict may be directed only if all reasonable men must reach the same conclusion. I am satisfied that reasonable men could conclude that a cautious driver would have seen the plaintiffs' vehicle approaching the intersection during the four seconds preceding the accident and would have been able to prevent the accident by stopping or slowing his own vehicle.

The majority write that the "defendant had a right to assume that plaintiff would stop at the signal as required by law" and that "there is no indication that the defendant was guilty of negligence from the point that he observed that plaintiffs' car was not going to stop."

If the defendant had seen the plaintiffs' vehicle slowing down with the apparent purpose of stopping he would have had the right to assume that plaintiffs' vehicle would stop at the traffic signal as required by law until, in the continuing exercise of caution, he observed the plaintiffs' vehicle depart from that apparent purpose. See *DePriest* v. *Kooiman* (1967), 379 Mich 44. But the defendant did not see the plaintiffs' vehicle until a split second before the accident even though it was there to be seen; the defendant did not have the right to dispense with observation (and that is what the jury could properly have found occurred) on the "assumption" that all vehicles facing red flashers will stop.

The law requires one facing a yellow flasher to exercise caution because, in part, of the danger that a driver facing a red flasher will not stop. Clearly the driver facing a yellow flasher is expected to take some affirmative action to avoid a collision at the intersection before he sees a car threatening his right of way; otherwise the state would install only

red flashers—yellow flashers would be superfluous. Manifestly, the statute, in directing the exercise of "caution" by one approaching an intersection controlled with a flashing yellow light, requires a higher degree of care than the ordinary care to be observed in driving through an uncontrolled intersection.

It is not the exercise of caution to sail blindly into an intersection controlled by a yellow flasher on the "assumption" that intersecting traffic will stop and not challenge one's right of way, until one happens to see another car proceeding in a manner inconsistent with that inordinate assumption.

The majority rely upon *McGuire* v. *Rabaut* (1958), 354 Mich 230; *Churukian* v. *LaGest* (1959), 357 Mich 173; *Haney* v. *Frederick V. Gentsch, Inc.* (1962), 368 Mich 354, and *DePriest* v. *Kooiman* (1967), 379 Mich 44. The present case is, however, factually distinguishable from these cases.

In *McGuire,* no stop or caution sign faced the defendant driver; he was not statutorily required to proceed with caution. Furthermore, and most importantly, in *McGuire* the trial judge submitted the case to the jury; the jury, not the trial judge, found for the defendant.

*Churukian* is also inapposite, although it concerned a collision at an intersection where a flashing red signal faced plaintiff's vehicle and a flashing yellow signal faced defendant's vehicle. The Court in that case ruled as a matter of law that the plaintiff was contributorily negligent. The question of whether the defendant—who faced the yellow flashing light—was negligent was not resolved. *Churukian* is inapplicable in a case brought by non-negligent passengers against a driver facing a yellow flashing light.

*Haney* also was an action commenced by a driver, not, as here, an action by non-negligent passengers.

The majority opinion states that the defendant driver was not negligent but neither states the facts nor the analysis of the record nor reasons which persuaded the Court to that view.

The *DePriest* case is factually similar to the present case in that it was an action brought by a passenger of an automobile which proceeded through a red flashing light against a driver who proceeded through a yellow flashing light. In *DePriest,* however, the defendant driver (p 49) "saw the [plaintiff's] car come to a stop in apparent obedience to the stop sign and rightfully assumed, as would any reasonably minded motorist in like circumstances, that the driver of that car would accord him the first right of passage through the intersection." The defendant in *DePriest* was found by the Court to have been free of negligence because "he saw the [plaintiff's] car come to a stop" and acted cautiously thereafter. In our case there is no evidence that plaintiffs' car slowed down; the defendant does not claim, based upon what he saw, that he had the right to expect the plaintiffs' car would stop. Since the defendant in our case conceded that he did not see the plaintiffs' car until just before the collision, he cannot claim that he, like the *DePriest* defendant, acted with circumspection after seeing the plaintiffs' car. To the contrary, in our case a jury could properly conclude that the defendant's failure to see the plaintiffs' car earlier than he did, although it was there to be seen, constituted a failure by the defendant to act cautiously as required by the statute.

More in point is *Moffatt* v. *Helmer* (1956), 345 Mich 153 (3 ALR2d 180), where our Supreme Court ruled that it was for the jury to decide whether the plaintiff (who faced a yellow flashing light) was guilty of contributory negligence in driving into

an intersection without stopping.[9]  Courts in other jurisdictions take a similar view.[10]

In the present case, the jury could properly have concluded that the defendant failed to exercise caution; that during the four seconds preceding the accident the defendant should have seen plaintiffs' vehicle and observed from its speed that it would not stop at the intersection and thereupon reduced his speed or stopped and thereby avoided the accident.  The trial judge erred in directing a verdict of no cause of action for the defendant.

I would reverse and remand for a new trial.

---

[9] See, also, *Rathburn* v. *Riedel* (1939), 291 Mich 652.

[10] In *Fetty* v. *Choate* (Civ App Tex, 1963), 367 SW2d 68, the defendant driver drove toward an intersection facing a flashing yellow light.  He testified that he looked to the left and right twice, once from a distance of 80 feet and again from 40 feet.  He did not see anything until he hit an eight-year-old boy on a bicycle in the middle of the intersection who apparently went through the flashing red light without stopping.  Although visibility on the side from which the boy was coming was partially obstructed by a filling station, the Texas Court of Civil Appeals held that the jury should have been permitted to decide whether the defendant kept a proper lookout and, in the exercise of due care and caution, should have seen the boy in time to avoid the accident.  Similarly, see *Carnes* v. *Winslow* (1962), 54 Del 536 (182 A2d 19).

In several cases where the issue was contributory negligence it has been held that a jury question was presented as to whether a plaintiff had maintained a proper lookout when he approached an intersection facing a flashing yellow light.  *Stathopoulos* v. *Shook* (1959), 251 NC 33 (110 SE2d 452).  Also, see *Savoy* v. *Cooley* (La App, 1962), 144 So 2d 223; *State Farm Mutual Automobile Ins. Co.* v. *Merritt* (La App, 1966), 185 So 2d 832.