*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAZEN SAYEGH,

Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

Defendant,

and

BEVERLY MARVIS ROBINSON,

Defendant-Appellee.

UNPUBLISHED
April 28, 2025
12:06 PM

No. 366933
Wayne Circuit Court
LC No. 20-004471-NF

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10) (no genuine issue of material fact) in this third-party action under the no-fault act, MCL 500.3101 *et seq.*[1] We vacate and remand for further proceedings.

## I. BACKGROUND

This case arises from an automobile and motorcycle accident that occurred between plaintiff, who was operating his Honda motorcycle, and defendant, who was driving a Jeep Compass, at the intersection of Jefferson Avenue and Chene Street in the city of Detroit on July 3, 2019. Jefferson Avenue has two westbound and two eastbound lanes that are divided by a middle

---

[1] Citizens Insurance Company of the Midwest (Citizens) also was a defendant in the lower court proceedings but was dismissed with prejudice by way of a stipulated order of dismissal entered February 12, 2022. Citizens is not participating in this appeal.

-1-

lane that is used for left turns. A parking lane borders the right lane of westbound Jefferson. Between the parking lane and the sidewalk there is a designated lane for bicycles.

Plaintiff testified that at about 11:30 p.m. on July 3, 2019, he was traveling on his motorcycle with his girlfriend, Maha Al-Barazi, as the passenger. There was a lot of traffic that night because there had been a social event in the area. Plaintiff testified that as he was driving in the right lane of westbound traffic on Jefferson Avenue, a car pulled in front of him, causing him to swerve right, cross the parking lane, and enter the bicycle lane. Defendant also was traveling with westbound traffic on Jefferson Avenue that night. As she approached the intersection with Chene Street, she attempted to make a right turn at a green light and collided with plaintiff's motorcycle.

In March 2020, plaintiff filed a two-count complaint, alleging a first-party no-fault claim against defendant Citizens Insurance Company of the Midwest (Citizens) as well as a count of negligence against defendant. Plaintiff alleged, among other violations, that defendant drove her Jeep Compass without using due care and caution in contravention of MCL 257.626b, she did not give due regard to plaintiff's operation of his motorcycle and to existing traffic and surface conditions in contravention of MCL 257.627, and she operated her vehicle at a rate of speed that was too fast for the Jeep Compass to be brought to a stop within the assured clear distance ahead under MCL 257.627(1).

In April 2022, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant asserted that it was plaintiff's own negligence in operating his motor vehicle in the bicycle lane that led him to collide with defendant's Jeep Compass. Defendant further asserted that plaintiff's conduct violated traffic statutes and regulations, which amounted to negligence per se. Defendant also argued that plaintiff's operation of his motorcycle in the bicycle lane was the cause in fact of the accident. Finally, defendant contended that the record did not yield genuine issues of material fact regarding whether she was negligent and, therefore, summary disposition ought to be granted in her favor.

The trial court granted defendant's motion, finding that defendant's operation of his motorcycle in the bicycle lane was "uncontrovertibly proximately connected with the collision" and that there was no genuine issue of fact, given plaintiff's negligence per se. Plaintiff filed a motion for reconsideration under MCR 2.119(F) and for relief from the trial court's order under MCR 2.612(C)(1)(a) and (f). Plaintiff argued that the trial court factually erred in concluding that it was not disputed that plaintiff was operating his motorcycle in the bicycle lane at the time of the collision. Plaintiff also asserted that the trial court erred as a matter of law in holding that the violation of a regulation or a statute amounts to negligence per se. Additionally, evidence of a sudden emergency can rebut any evidence of a statutory or regulatory violation and plaintiff contended that factual disputes remained regarding whether a sudden emergency forced him to enter the bicycle lane.

The trial court denied plaintiff's motion for reconsideration, determining that plaintiff had not rebutted his negligence per se of traveling in the bicycle lane; that plaintiff could not establish that defendant's actions were the cause in fact of the collision; and that plaintiff alleged no negligence against defendant, who was legally proceeding in the right lane of traffic and making a legal right turn at the time of the collision. This appeal followed.

## II. DISCUSSION

### A. PLAINTIFF'S LOCATION AT THE TIME OF THE COLLISION

On appeal, plaintiff raises several claims of error with respect to the trial court's ruling on defendant's motion for summary disposition under MCR 2.116(C)(10). First, plaintiff argues that the trial court erred in determining that the parties did not dispute that plaintiff was operating his motorcycle within the bicycle lane at the time of the collision and that genuine issues of material fact did not exist on this issue. We agree.

This Court reviews de novo a trial court's decision on a motion under MCR 2.116(C)(10). *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). In *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), our Supreme Court explained the standard of review for a motion brought under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10), . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted in original).

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 837 NW2d 257 (2013).

The four elements of a prima facie claim of negligence are: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) harm. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 113; 1 NW3d 44 (2023).

In the present case, the trial court stated at the outset of its opinion and order that "[i]t is undisputed by the parties that [p]laintiff was operating his motorcycle in the lane reserved for bicycles, at the time of the collision." The trial court's statement is factually inaccurate because throughout the lower court proceedings, plaintiff vigorously contested the allegation that he was operating his motorcycle in the bicycle lane when the collision occurred.

In his brief in support of his response to defendant's motion for summary disposition, plaintiff asserted that "[d]efendant's allegation that [plaintiff] was riding his motorcycle in a bicycle lane at the time of the collision is false." Throughout his brief in support, plaintiff reiterated that he was in the right lane of travel on Jefferson Avenue traveling westbound when the accident occurred, and he had only been in the bicycle lane for a very short period because of a sudden emergency. Plaintiff also cited the deposition testimony of Al-Barazi, who stated that she and plaintiff were riding in the right lane of travel when they were struck by defendant's vehicle,

which had turned from the left lane of travel into their motorcycle. Plaintiff also cited testimony from defendant in which she confirmed that the point of impact of the collision was in the right lane of westbound Jefferson Avenue as it intersected with northbound Chene Street. Plaintiff also claimed that even if reasonable minds could differ regarding whether his motorcycle was in the bicycle lane at the time of the collision, his presence in the bicycle lane was justified on the basis of a sudden emergency as he was attempting to avoid an accident with another vehicle. Therefore, we conclude that the record does not support the trial court's determination that the parties had agreed that plaintiff was operating his motor vehicle in the bicycle lane at the moment of their collision.

Moreover, a review of the record confirms that genuine issues of material fact remained with respect to whether plaintiff was in fact in the bicycle lane at the time of the collision. For example, plaintiff testified that he had just merged back into the right lane on Jefferson Avenue westbound and had traveled into the intersection of Jefferson Avenue and Chene Street when defendant's Jeep Compass hit his motorcycle. Similarly, Al-Barazi testified that she was certain that she and plaintiff were in the right lane, not the bicycle lane, when the collision occurred because she could see parked cars alongside them on the right side of Jefferson Avenue. In contrast, defendant testified that police indicated to her after the accident that she had not done anything wrong and that plaintiff had been traveling in the bicycle lane at the time of the accident. Accordingly, given that genuine issues of material fact existed regarding whether plaintiff was operating his motorcycle in the bicycle lane at the time of the accident, it was not appropriate for the trial court to grant summary disposition in defendant's favor under MCR 2.116(C)(10).

## B. NEGLIGENCE PER SE AND EVIDENCE OF NEGLIGENCE

Plaintiff next argues that the trial court erred in concluding that genuine issues of material fact did not exist with regard to whether plaintiff's operation of his motorcycle in the bicycle lane amounted to negligence per se on the basis that such operation violated an administrative regulation prohibiting the operation of motor vehicles in bicycle lanes. We agree.

As our Supreme Court acknowledged in *Meyers v Rieck*, 509 Mich 460, 471; 983 NW2d 747 (2022), once a duty is established, the question is whether the standard of care was breached. The standard of care in a negligence action can be established by statute or legal regulation. *Id*. at 472. In Michigan, the prevailing view is that the violation of a statutory duty will amount to negligence per se. *Id*. An important caveat to this rule is that a violation of a safety or penal statute establishes a rebuttable presumption of negligence, rather than negligence per se. *Id*. n 4. That presumption may be rebutted with evidence of "a legally sufficient excuse." *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 721; 965 NW2d 690 (2020). However, the violation of an administrative rule, regulation, or an ordinance is only evidence of negligence. See *Zeni v Anderson*, 397 Mich 117, 142; 243 NW2d 270 (1976); *Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 163; 923 NW2d 894 (2018).

Defendant argued that by operating his motorcycle in the bicycle lane plaintiff contravened Mich Admin Code, R 28.1322(1), which prohibits a person from "operat[ing] a vehicle on or across a bicycle lane, except to enter or leave adjacent property." Defendant also asserted that plaintiff

violated MCL 257.642,[2] which addresses the rules for the operation of vehicles on roadways within Michigan, and as relevant to this appeal, required that a vehicle travel in the extreme right-hand lane of travel except when "overtaking and passing" other vehicles and that motorists, including motorcyclists, must obey all traffic control devices. Defendant also claimed that plaintiff violated MCL 257.676b,[3] which prohibits interference with the flow of vehicular traffic.

Defendant testified that as she approached the intersection of Jefferson Avenue and Chene Street, she was in the right lane and she believed that the light was green. Defendant was trying to make the turn when plaintiff, who defendant alleged was traveling in the bicycle lane, "came from out of nowhere," causing the collision. Plaintiff and Al-Barazi, on the other hand, testified

---

[2] At the time of the parties' accident, MCL 257.642 provided, in pertinent part:

(1) When a roadway has been divided into 2 or more clearly marked lanes for traffic, the following rules in addition to all others consistent with this act apply:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the operator has first ascertained that the movement can be made with safety. Upon a roadway with 4 or more lanes that provides for 2-way movement of traffic, a vehicle shall be operated within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn.

* * *

(c) Official traffic control devices may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and operators of vehicles shall obey the directions of the traffic-control device.

(d) Official traffic-control devices may be installed prohibiting the changing of lanes on sections of roadway, and operators of vehicles shall obey the directions of the traffic-control devices.

MCL 257.642 has been subsequently amended but the amendments are not substantive or relevant to the issues on appeal. See 2022 PA 179, 2023 PA 148.

[3] At the time of the parties' accident, MCL 257.676b provided, in pertinent part:

(1) Subject to subsection (2), a person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular or pedestrian traffic upon a public street or highway in this state, by means of a barricade, object, or device, or with his or her person.

MCL 257.676b has been subsequently amended but the amendments are not relevant to the issues on appeal.

that they were traveling in the right-hand lane and that defendant was in the left lane of travel of westbound Jefferson when she collided with their motorcycle as they crossed the intersection of Jefferson Avenue and Chene Street. On the basis of this evidence, genuine issues of material fact existed regarding whether plaintiff violated the provisions of MCL 257.642, the statute that required plaintiff to follow traffic control devices and travel in the extreme right-hand lane. Violation of this statute would create a rebuttable presumption of negligence. See *Meyers*, 509 Mich at 472 n 4.

However, plaintiff presented evidence of "a legally sufficient excuse" that would rebut the presumption of negligence. See *Randall*, 334 Mich App at 721. Specifically, plaintiff, citing the sudden-emergency doctrine, *White v Taylor Distributing Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591 (2008),[4] asserted that he was forced to enter the bicycle lane before the accident occurred as an evasive maneuver to avoid another vehicle that was going to hit his motorcycle and that he had merged back into the right lane of travel and had entered the intersection of Jefferson Avenue and Chene Street when the accident took place.

Plaintiff further claimed that he had established a rebuttable presumption of negligence on the part of defendant because defendant violated MCL 257.642, as well as MCL 257.647,[5] which requires that a right turn be made as close as practicable to the right-hand curb or edge of the roadway, and MCL 257.648,[6] which mandates that a driver first determine that a turn can be made in safety and after making an appropriate signal. Plaintiff also claimed that evidence of defendant's negligence existed because defendant had contravened Mich Admin Code, R 28.1438, which

---

[4] In *White*, 482 Mich at 139, our Supreme Court stated that the statutory presumption of negligence, which in that case arose under MCL 257.402(a), could be rebutted "by showing the existence of a sudden emergency." The Court explained that the sudden-emergency doctrine applies when a collision occurred as a result of a sudden emergency not of the party's own making. *Id*. at 139-140.

[5] MCL 257.647 provides, in pertinent part:

> (1) The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> (a) Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

[6] MCL 257.648 provides, in pertinent part:

> (1) The operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in this section.
>
> (2) Except as otherwise provided in subsection (5), a signal required under this section shall be given either by means of the hand and arm in the manner specified in this section, or by a mechanical or electrical signal device that conveys an intelligible signal or warning to other highway traffic.

prohibits a driver from entering an intersection unless there is sufficient space for his or her vehicle. Plaintiff also asserted that defendant violated the common-law duties of care imposed on drivers. See *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956) (recognizing that in the absence of statutory requirements, a motorist in Michigan bears the duty in the operation of his automobile "to exercise ordinary and reasonable care and caution, . . . that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances.").

On the basis of the evidence, genuine issues of material fact existed with regard to whether defendant violated MCL 257.642 and MCL 257.647, both of which would give rise to a rebuttable presumption of her negligence. For example, defendant testified that the accident occurred as she entered the intersection of westbound Jefferson Avenue and northbound Chene Street and attempted to make a right turn onto Chene Street. Defendant also testified that the motorcycle had been traveling in the bicycle lane and defendant had not reached the crosswalk on Chene Street when the motorcycle hit her Jeep Compass. Although defendant maintained that she was in the right lane as she attempted her turn, Al-Barazi stated that her recollection was that she saw defendant's Jeep Compass approach from the left lane before colliding with plaintiff's motorcycle. Therefore, the evidence yielded factual issues regarding whether defendant, in attempting to make her right-hand turn, made her lane changes safely. See MCL 257.642(1)(a).

Similarly, plaintiff testified that although he had been in the bicycle lane for a short time because of a sudden emergency not of his making, he had merged back into traffic and was in the extreme right lane when the collision occurred. Accordingly, factual disputes also remained with respect to whether defendant, in making her right turn onto Chene Street, had made the turn as close as practicable to the curb, MCL 257.647(1)(a), particularly given the testimony of both plaintiff and Al-Barazi that defendant was in the left lane of westbound Jefferson Avenue.

Additionally, the evidence showed that defendant's Jeep Compass collided with plaintiff's motorcycle as she attempted her right turn onto Chene Street, as plaintiff and Al-Barazi testified that it was defendant who caused the accident. In contrast, defendant asserted that plaintiff's motorcycle "came out of nowhere" as she attempted to complete her right turn. Accordingly, genuine issues of material fact also existed regarding whether defendant contravened MCL 257.648(1), which required defendant to ensure that a turn could be made safely before she in fact made the turn. Therefore, a rebuttable presumption of defendant's negligence also was established. Defendant did not offer a legally sufficient excuse for her alleged negligence, instead claiming throughout the lower court proceedings that she was not negligent and that it was plaintiff who was responsible for causing the accident.

Finally, with regard to Mich Admin Code, R 28.1438, genuine issues of material fact also remained about whether defendant contravened this administrative rule, as plaintiff testified that the collision occurred once he had entered the intersection of Jefferson Avenue and Chene Street. Defendant, in her own testimony, also acknowledged that she was not able to complete her turn onto Chene Street before being struck by plaintiff's motorcycle, testimony that supports the reasonable conclusion that defendant was still in the intersection of Jefferson Avenue and Chene Street when the accident occurred. Therefore, factual disputes existed regarding whether defendant obstructed the passage of other vehicles in the intersection. A violation of this

administrative rule would amount to evidence of negligence on the part of defendant. See *Goodwin*, 325 Mich App at 163.

In deciding defendant's motion for summary disposition, the trial court ruled that defendant's action in making a right turn was legal and that plaintiff's operation of his motorcycle in the bicycle lane in violation of Mich Admin Code R 28.1322 amounted to negligence per se. In making this ruling, the trial court erred in several respects. First, in the context of deciding a motion for summary disposition under MCR 2.116(C)(10), in accepting defendant's version of the events of the accident and rejecting both plaintiff's and Al-Barazi's testimonies, it is clear that the trial court improperly assessed witness credibility, weighed the evidence, and in doing so, decided a key issue of disputed fact, that being whether plaintiff's conduct rose to the level of negligence per se under Michigan law. See *Pioneer State*, 301 Mich App at 377. Second, the trial court erred as a matter of law because, as discussed, the alleged violation of an administrative rule would only be *evidence* of negligence, rather than negligence per se. See *Goodwin*, 325 Mich App at 163.

### C. COMPARATIVE NEGLIGENCE AND THE NO-FAULT ACT

Citing *Kubasinski v Johnson*, 46 Mich App 287, 289; 208 NW2d 74 (1973),[7] the trial court determined that the issue of negligence was for the court to decide because plaintiff's negligent conduct of operating his motorcycle in the bicycle lane was "incontrovertibly proximately connected" with the collision that caused his injuries. The *Kubasinski* Court recognized that while the proximate cause of negligence is generally a question of fact, under certain "rare" circumstances it will become a question of law for the court. *Id*. at 288. *Kubasinski* was decided before our Supreme Court adopted the doctrine of pure comparative fault, *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979), and before the Legislature implemented a legislative system of pure comparative fault, MCL 500.3101 *et seq*. Michigan's "switch" to comparative negligence has not invalidated caselaw that predated the comparative negligence scheme. *Marion v Grand Trunk W R Co*, 513 Mich 220, 236; 15 NW3d 180 (2024). "Yet, pre-*Placek* precedent should not be unthinkingly applied to modern cases, as the switch to comparative negligence has created distinctions that sometimes preclude the application of older caselaw." *Id*.

In the present case, the trial court's ruling was inconsistent with precedent from our Supreme Court concerning a plaintiff's recovery under a comparative fault system. Our Supreme Court in *Marion*, 513 Mich at 234, recently recognized that under Michigan's comparative negligence scheme, a plaintiff still may recover against a negligent defendant even if his or her own negligence contributed to their injury. "The plaintiff's damages award is simply reduced to reflect the extent of the plaintiff's own fault." *Id*. This state's adoption of comparative negligence also meant that the manner in which damages awards were calculated was altered. *Id*. at 236. Under the contributory negligence system that was in place before our Supreme Court decided

---

[7] Cases from this Court decided before November 1, 1990, are not precedentially binding, and while this Court may not be "strictly bound to follow older published cases," this Court will still regard them as retaining some authority, provided they were not disputed by some other contemporaneous case. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

*Placek*, a plaintiff's recovery in a negligence action was barred if his or her own negligence caused their injury even if the portion of the fault apportioned to the plaintiff was minimal. *Id*. at 234-235; *Kandil*, 512 Mich at 113. However, the adoption of the comparative negligence statutes reflected the Legislature's intention to apportion liability according to the relative fault of all parties contributing to the plaintiff's damages. *Lamp v Reynolds*, 249 Mich App 591, 596; 645 NW2d 311 (2002).

As relevant to this appeal, MCL 600.6304(8) defines "fault" as "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, *that is a proximate cause of damage sustained by a party*." (Emphasis added.) The requisite proximate cause between the alleged wrongful act and resulting damages is established, similar to when liability is contested in any negligence case, when the defendant proves that the plaintiff's conduct was both a cause in fact and a legal, or proximate, cause of his damages. *Lamp*, 249 Mich App at 599.

In *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017), our Supreme Court explained the distinction between cause in fact and proximate cause:

> Proximate cause is an essential element of a negligence claim. It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred. Courts must not conflate these two concepts. We recognize that our own decisions have not always been perfectly clear on this topic given that we have used "proximate cause" both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation. All this broader characterization recognizes, however, is that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked. If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue. [Quotation marks and citations omitted.]

In a recent unpublished case, *Ong v Lewis*, unpublished per curiam opinion of the Court of Appeals, issued June 8, 2023 (Docket No. 361061), pp 13-14,[8] this Court recognized the unique

---

[8] While not binding under the rule of stare decisis, unpublished decisions of this Court may be considered for their persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

interplay between the comparative fault scheme and the limits on a third-party action brought under the no-fault act. Specifically, this Court explained, *id.*:

> The no-fault act places certain limits on tort liability. *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). However, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b).[9] A plaintiff is considered to be at fault if "the plaintiff's conduct was both a cause in fact and a legal, or proximate, cause of his damages." [*Lamp*, 249 Mich App at 599]. *Although comparative fault is generally a question for the fact-finder, comparative fault may be decided on a motion for summary disposition if no reasonable juror could find that the defendant was more at fault than the plaintiff. Huggins v Scripter*, 469 Mich 898, 898; 669 NW2d 813 (2003). "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety *is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." Rodriguez v Solar of Mich, Inc,* 191 Mich App 483, 488; 478 NW2d 914 (1991). [Emphasis added.]

We find the analysis of the Court in *Ong* persuasive and adopt it in this case.

---

[9] At the time of the parties' accident in *Ong*, MCL 500.3135 provided, in pertinent part:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.
>
> (2) For a cause of action for damages under subsection (1) or (3)(d), all of the following apply:
>
> * * *
>
> (b) Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault.

Significant legislative revisions were made to the no-fault act effective June 11, 2019, but the amendments to MCL 500.3135 are not relevant to the issues on appeal. See 2019 PA 22.

In the present case, instead of reserving for the trier of fact the question of plaintiff's comparative fault, the trial court itself determined the issue of comparative fault, which is inconsistent with caselaw from this Court and our Supreme Court. In deciding the issue of plaintiff's comparative fault as a matter of law, the trial court did not preface its ruling with any indication that reasonable minds could not differ regarding plaintiff's alleged negligence. See *Ong*, unpub op at 13. The trial court also did not provide a detailed analysis allowing for meaningful appellate review regarding how it determined that plaintiff's conduct was both the factual cause of the accident as well as the legal cause. See *id.* The trial court also did not state that it had determined that plaintiff was more than 50% at fault in the parties' collision, which would mean that damages could not be assessed in plaintiff's favor. See MCL 500.3135(b)(2).

## III. CONCLUSION

Because of these legal errors, we vacate the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10) and remand for proceedings consistent with this opinion.[10] We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young

---

[10] Plaintiff also asserts on appeal that defendant submitted inadmissible evidence in support of her motion for summary disposition. Because these myriad evidentiary challenges were not included within plaintiff's statement of the issues presented, the challenges are not properly before this Court. See *Mich Adventure, Inc, v Dalton Twp*, 290 Mich App 328, 337 n 3; 802 NW2d 353 (2010). Moreover, because the errors we previously addressed are sufficient to warrant vacating the trial court's order, it is unnecessary to address defendant's remaining arguments.

-11-